RCH:EDP/ADG
F. #2025R00729

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

      - against -

DAVID MOTOVICH,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR <u>AN ARREST WARRANT</u>

(18 U.S.C. §§ 371, 1791)

Case No. 26-MJ-130

EASTERN DISTRICT OF NEW YORK, SS:

CORY O'DONOHUE, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

In or about and between April 2025 and January 2026, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAVID MOTOVICH, being an inmate of a prison, to wit: the Metropolitan Detention Center in Brooklyn, New York (the "MDC"), did knowingly and intentionally possess and obtain a prohibited object, to wit: one or more phones.

(Title 18, United States Code, Section 1791(a)(2))

In or about and between May 2026 and June 2026, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DAVID MOTOVICH, together with others, did knowingly and intentionally conspire for MOTOVICH, being an inmate of a prison, to wit: the Federal Correctional Institute, Otisville, in Orange

County, New York ("FCI Otisville"), to possess or obtain one or more prohibited objects, to wit:
one or more phones, contrary to Title 18, United States Code, Section 1791(a)(2).

(Title 18, United States Code, Section 371)

The source of your deponent's information and the grounds for his belief are as
follows:[1]

1.  I am a Special Agent with the FBI and have been for approximately four
years.   I am currently assigned to New York Field Office Squad C-14, where I participate in
public corruption investigations, including investigations concerning the introduction of
contraband into prisons and government officials misusing their positions for personal gain.   I
am familiar with the facts and circumstances of this investigation from my personal participation
in the investigation, review of documents, and discussions I have had with other law enforcement
personnel.   Where the contents of documents and the actions, statements and conversations of
others are reported herein, they are reported in sum and substance and in part.

I.      Background on the Conviction and Sentencing of David Motovich

2.  On July 30, 2024, the defendant DAVID MOTOVICH was convicted of
16 felony crimes following a three-week jury trial, including operating an unlicensed money
transmitting business, bank fraud, money laundering, aggravated identity theft and conspiracy to
defraud the United States.   (See 21-CR-497) (WFK).   On November 19, 2025, the trial judge
sentenced MOTOVICH to 15 years' imprisonment.   (See ECF Nos. 451-52).

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to
establish probable cause to arrest, I have not described all the relevant facts and circumstances of
which I am aware.

3.      The defendant DAVID MOTOVICH was initially detained at the MDC following his conviction on July 30, 2024.   He was subsequently transferred on or about January 21, 2026, to FCI Otisville.   A subsequent investigation has revealed that MOTOVICH has used one or more contraband devices in both federal correctional facilities.

II.      Background on the MDC, FCI Otisville and Contraband Smuggling

4.      The MDC is a federal jail located in Brooklyn, New York and managed by the United States Bureau of Prisons (the "BOP").   The MDC is currently New York City's only federal detention facility.   Although most individuals incarcerated at the MDC are detained prior to their trial on federal charges filed in the United States District Court for the Eastern District of New York or the United States District Court for the Southern District of New York, some individuals at the MDC have already been convicted or sentenced.   Currently, approximately 1,276 individuals are incarcerated at the MDC.

5.      Incarcerated individuals at the MDC are not permitted to possess contraband inside the facility by law.   According to 28 C.F.R. § 500.1(h), the term "contraband," as used within the BOP, is defined as "material prohibited by law, or by regulation, or material which can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the facility or protection of the public," which includes narcotics, cellphones, cigarettes, and alcohol, among other prohibited items.

6.      When inmates arrive at the MDC they are provided with an "Inmate Admission & Orientation Handbook," which, among other things, lists prohibited acts within the facility and the available sanctions for violations.   The most serious prohibited acts are deemed the "greatest severity level prohibited acts."   One such act is the "possession, manufacture, introduction, or loss of a hazardous tool."   Such "hazardous tools" include items that are

"hazardous to institutional security or personal safety; e.g., . . . portable telephone, pager, or other electronic device."   Other violations of this same severity include (1) killing; (2) escape from escort; (3) possession of a firearm; (4) rioting; (5) taking hostages; and (6) sexual assault, which are codified in Table 1 of 28 C.F.R. § 541.3.

7.   In accordance with 28 C.F.R. § 540.102, the MDC must be able to monitor the telephone calls, aside from legal calls, placed by individuals housed at the MDC to "preserve the security and orderly management of the institution and to protect the public."   The Inmate Admission & Orientation Handbook informs MDC inmates that telephone calls that the inmate places are "subject to monitoring and recording by institution staff."

8.   To maintain the safety, security and orderly operation of the MDC, its staff are also prohibited from bringing cellphones (even their own personal cellphones) into the MDC facility.   See 28 C.F.R. §§ 511.11, 511.12 (noting that "prohibited activities" include "introducing, or attempting to introduce, prohibited objects into a Bureau [of Prisons] facility," and defining "prohibited objects" to include "telephones").

9.   Based on my training, experience and information obtained from other law enforcement officers, I am aware that contraband cellphones are frequently smuggled into the MDC, and that inmates purchase them inside of the jail.   Contraband phones are often smuggled into the facility by corrupt BOP employees in exchange for bribes from incarcerated individuals and their family members and associates.   Contraband cellphones are frequently sold at highly inflated prices – often many multiples greater than the cost of a comparable product purchased outside of a BOP facility.   Contraband cellphones are extremely valuable items within a jail because they allow incarcerated individuals to make voice calls and send messages without being monitored by the BOP.   Inmates often have third parties, such as family members and friends,

pay for services for contraband cellphones.   Based on my training, experience and participation in this investigation, as well as conversations with other law enforcement agents, I am also aware that contraband cellphones are often shared among inmates and sometimes "rented" for specific periods of time by particular inmates within a unit.

10.     Federal judges in this district and the Southern District of New York have cited the proliferation of contraband cellphones as a serious problem in the MDC.   See, e.g., United States v. Chavez, 710 F. Supp. 3d 227, 228 (S.D.N.Y. 2024) (Furman, J.) ("For years, the conditions in the federal jails that serve this District (and the Eastern District of New York) have been a major, growing, and widely understood problem. . . .   Contraband — from drugs to cell phones — is widespread."); United States v. Colucci, --- F. Supp. 3d ----, No. 23-CR-417, 2024 WL 3643857, at *4 (E.D.N.Y. Aug. 5, 2024) (Brown, J.) (describing the problems of contraband phones at MDC and concluding that "[t]he results of such anarchy are predictable").

III.     The Scheme to Use the MDC Contraband Phone

11.     As set forth below, there is probable cause to believe that during his time in the MDC, the defendant DAVID MOTOVICH used one or more contraband cellular devices, including the device assigned a call number ending in 9785 (the "MDC Contraband Phone"), up until his transfer from the MDC.

12.     The MDC Contraband Phone was activated on or about April 4, 2025 by an account associated with a subscriber name with the initials "MC"[2] and a contact number ending in 1429 (the "MC Number").

13.     On or about April 3, 2025, the day before the MDC Contraband Phone was activated, the MC Number exchanged text messages with a phone number belonging to a

---

[2]     The full name of the subscriber is known to the affiant.

family member of the defendant DAVID MOTOVICH whose identity is known to your affiant ("Co-Conspirator 1"), while MOTOVICH was an inmate at the MDC.   Based on my training, experience and my knowledge of the investigation, I believe that Co-Conspirator 1 exchanged text messages with the MC Number on April 3, 2025, because Co-Conspirator 1 was helping MOTOVICH activate and acquire the MDC Contraband Phone.   Starting late in the evening of April 5, 2025, the MDC Contraband Phone began communicating with various individuals connected to MOTOVICH, including Co-Conspirator 1 (who had contacted the subscriber number associated with the MDC Contraband Phone approximately two days earlier) and multiple other family members and known associates of MOTOVICH.

14.     These calls, as well as other messages, continued throughout 2025 and early 2026, and continued to be exchanged with individuals associated with the defendant DAVID MOTOVICH.   In total, there were over 500 contacts by the user of the MDC Contraband Phone with individuals associated with MOTOVICH.   All telephone calls to and from MOTOVICH's family and associates ceased on or about the evening of January 20, 2026, the evening before MOTOVICH was transferred from the MDC to FCI Otisville, except that Co-Conspirator 1 continued to communicate with the user of the MDC Contraband Phone through at least March 2026 on a limited basis.

15.     Since the defendant DAVID MOTOVICH was transferred, the MDC Contraband Phone has been used to communicate with individuals associated with at least three other inmates of the MDC.   Specifically, in or about July 2025, January 2026 and February 2026, the MDC Contraband Phone was used to communicate with an attorney for two MDC inmates.   During that same time period, namely January and February 2026, the MDC Contraband Phone was also used to communicate with the sister and girlfriend of another MDC

inmate.   Finally, in April 2026, the MDC Contraband Phone was used to communicate with a family member and also with a known criminal associate of a different MDC inmate.   Based on my training and experience, I know that inmates housed at the MDC commonly share contraband phones with other inmates.   Therefore, I believe that it is likely that the above-referenced telephone communications reflect that the MDC Contraband Phone was used by one or more of these other inmates.

16.     In addition, during the execution of a search warrant of a cloud-based account associated with the phone of an individual in communication with the defendant DAVID MOTOVICH, law enforcement agents recovered the below photograph dated July 9, 2025, of MOTOVICH and an inmate known to have been residing at the time at the MDC and who, based on telephone records, was likely also a user of the MDC Contraband Phone.   Based on my training and experience, I know that inmates are not legally permitted to take photographs within the MDC, but that such photographs can be created with contraband telephones.   I therefore believe it is likely that this photograph was created using the MDC Contraband Phone.



17.    Moreover, on or about April 13, 2026, pursuant to a judicially-authorized warrant, FBI agents activated a cell site simulator within the MDC and successfully detected the International Mobile Subscriber Identity number associated with the MDC Contraband Phone, indicating that the MDC Contraband Phone was at the MDC at the time and in close proximity.

IV.    <u>The Scheme to Obtain and Use the Otisville Contraband Phone</u>

18.    As previously discussed, the defendant DAVID MOTOVICH was transferred to FCI Otisville in or about the early morning of January 21, 2026.   Based on my training and experience, I know that FCI Otisville, like MDC, is subject to the same restrictions that bar inmates from using contraband telephones.   I also know that inmates at FCI Otisville, like the inmates at MDC, frequently violate those restrictions by using such contraband devices, oftentimes acquiring those contraband phones through the assistance of corrupt BOP employees.

As set forth below, there is probable cause to believe that during his time in Otisville, MOTOVICH used one or more cellular devices, including a cellular phone assigned a call number ending in 2542 (the "Otisville Contraband Phone").

19.     The Otisville Contraband Phone was activated on or about May 13, 2026. The only call with the Otisville Contraband Phone that day was an outgoing call to a phone number associated with a telephone store in Midwood, Brooklyn,[3] which occurred within approximately five minutes of the first automated text message.   Based on my training and experience, and the above-referenced information, I believe the Otisville Contraband Phone was purchased at the telephone store and the purchaser placed a call to the telephone store to confirm that the phone was activated and connected to the cellular network prior to departing the store. The next phone call was not placed or received until May 17, 2026, the day the phone appears to have been introduced into FCI Otisville.   On or about May 17, 2026, at approximately 9:44 a.m., Co-Conspirator 1 visited the defendant DAVID MOTOVICH at FCI Otisville, according to BOP records.   On that same date, at approximately 10:56 a.m., a messaging application connected to the Otisville Contraband Phone was created.   On the same date, at approximately 9:42 p.m., the Otisville Contraband Phone had its second phone call (the first since its activation in Brooklyn).   Based on my training and experience and the above-described facts, I believe

---

[3] The telephone store is located one block from the defendant DAVID MOTOVICH's family-owned business.

Co-Conspirator 1 illicitly brought the Contraband Phone to MOTOVICH while he was in custody at FCI Otisville.

20.    In addition, pursuant to a judicially authorized warrant, law enforcement agents recently obtained geolocation information for the Otisville Contraband Phone, which reflects that it was located in the vicinity of FCI Otisville as recently as June 29, 2026.

21.    Phone records for the Otisville Contraband Phone further indicate that the Otisville Contraband Phone was used by the defendant DAVID MOTOVICH.   The Otisville Contraband Phone has had numerous contacts, including calls and other messages, with MOTOVICH's family members and known associates.   For example, since on or about May 17, 2026, the Otisville Contraband Phone has had over 100 communications with immediate family members of MOTOVICH, including Co-Conspirator 1.   The most recent communication between the Otisville Contraband Phone and a known family member of MOTOVICH occurred on or about June 28, 2026.

22.    Based on the facts set forth above and my training and experience, there is probable cause to believe that the defendant DAVID MOTOVICH unlawfully obtained and possessed the MDC Contraband Phone while at the MDC.   There is also probable cause that MOTOVICH conspired with Co-Conspirator 1, and possibly others, to obtain and possess the Otisville Contraband Phone for use at FCI Otisville.   In furtherance of this conspiracy, the Otisville Contraband Phone was procured in Brooklyn and smuggled to MOTOVICH.

WHEREFORE, your deponent respectfully requests that the defendant DAVID MOTOVICH be dealt with according to law.

I further request that the Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the affidavit and arrest

warrant.   Based upon my training and experience, premature disclosure of the contents of this affidavit and related documents will seriously jeopardize the investigation, including by giving the defendant and his associates an opportunity to destroy or tamper with evidence and change patterns of behavior.

*Cory O'Donohue*

CORY O'DONOHUE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__30th__ day of June, 2026

THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK